# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
Oct 16, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

United States of America )
v. )
) Case No. 2:25-mj-0143 SCR
)
CURT MICHAEL TARAS )
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of September 24, 2025 in the county of Sacramento in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(q)(2)(A) | Possession of a firearm in a school zone |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

Kyle Roberts
*Complainant's signature*

Kyle Roberts, Task Force Officer FBI
*Printed name and title*

Sworn to me and signed via telephone.

Date: October 16, 2025

*Judge's signature*

City and state: Sacramento, California    Sean C. Riordan U.S. Magistrate Judge
*Printed name and title*

ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
BRAD NG
Special Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. |
|---|---|
| Plaintiff, | AFFIDAVIT IN SUPPORT OF COMPLAINT |
| v. | **UNDER SEAL** |
| CURT MICHAEL TARAS | |
| Defendant. | |

I, Kyle Roberts, being first duly sworn, hereby depose and state as follows:

### I.     INTRODUCTION AND AGENT BACKGROUND

1. I am a Detective with the Sacramento Police Department and have been sworn since December 2014. I am currently assigned to the FBI Joint Terrorism Task Force and have been a Task Force Officer since May 13, 2024. As a deputized federal agent, I am authorized to investigate violations of laws of the United States issued under the authority of the United States. My investigative responsibilities include ideological violent crime.

2. In July of 2014, I attended the Sacramento Police Academy and graduated in December of 2014. This academy was certified by the California Commission on Peace Officer Standards and Training (POST). During this approximately six (6) month long academy, I

received basic instruction in all aspects of policing which included but was not limited to: investigation, interviewing, criminal law, arrest procedures, firearms, arrest control, and police tactics. I also received twenty (20) hours of training from experienced narcotics investigators regarding the identification of illegal narcotics, including but not limited to: methamphetamine, cocaine hydrochloride, cocaine base/rock cocaine, heroin, and marijuana. These experienced narcotic investigators discussed, demonstrated, and lectured how these drugs were used, transported, packaged for sale, and sold.

3. Since December of 2014 to present, I have conducted, as well as participated in, no less than one hundred (100) preliminary criminal investigations, including but not limited to: homicide, rape, robbery, burglary, assault, fraud, larceny, traffic offenses, and various narcotic related offenses. During these investigations, I conducted interviews with victims, witnesses, and suspects and have made numerous arrests as a result.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Where statements made by other individuals are referenced in this Affidavit, such statements are described in sum and substance and in relevant parts only. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant parts only.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that CURT MICHAEL TARAS has violated 18 U.S.C. § 922(q)(2)(A) – possession of a firearm within a school zone.

## II.     STATUTORY BACKGROUND

7. 18 U.S.C. § 922(q)(2)(A) makes it a crime to possess a firearm in a school zone by stating, "It shall be unlawful for any individual knowingly to possess a firearm that has

moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." A "school zone" is defined to include areas "within a distance of 1,000 feet from the grounds of a public, parochial or private school." 18 U.S.C. § 922(a)(26)(B). There are exceptions to this prohibition where the firearm is possessed on private property, where the firearm is unloaded and possessed in a locked container or firearms rack on a motor vehicle, possessed by an individual for use in an approved school program, possessed by an approved contract worker with the school, possessed by a law enforcement officer in acting in an official capacity, and where a firearm is unloaded and possessed by the a person traversing the school zone to access public or private lands." *See* 18 U.S.C. § 922(q)(2)(B).

### III.   PROBABLE CAUSE

8. On September 24, 2025, at approximately 6:32 p.m., officers with the Folsom Police Department responded to Folsom High School ("FHS") regarding a call involving a suspicious person on campus. Officers checked the area, and they found the suspicious person—Curt Michael TARAS ("TARAS")—near a yoga studio in shopping center adjacent to Folsom High School. Officers also noted that TARAS' intimate partner had called police on September 23, 2025 to report that TARAS had violated a court order requiring him to stay away from his intimate partner. Officers detained TARAS for violating the restraining order as well as the incident reported at Folsom High School.

9. During the investigation into the violation of the restraining order, officers spoke to people who reported that TARAS had been talking "crazy" and acting "paranoid." One person reported that they encountered TARAS at the home where he was not supposed to be pursuant to the restraining order. This person reported that TARAS was looking for "eclipse glasses," claiming that something bad would happen because the weather had been so hot, and talking about the EMP electrical grid going down.

10. Concerning the incident at Folsom High School, officers spoke to a basketball

3

coach who encountered TARAS and called police. The basketball coach identified TARAS as the person he encountered earlier that evening. The basketball coach also provided the following description of his encounter with TARAS to police:

    a) The coach saw TARAS in an unlit area of the school near the boys' locker room who appeared to be trying to open the door. When the coach asked TARAS what he was doing, TARAS claimed to be looking for the exit. The coach told TARAS that the exit was the door he came through, and TARAS became confrontational and refused to leave. The coach told TARAS numerous times he needed to leave and that he could not be on campus. TARAS walked toward the exit, and the coach followed a few feet behind him to ensure he left. When TARAS stopped in front of the weight room and watched the girls inside, the coach again told him to leave. As the basketball coach and another school employee followed TARAS to make sure he left, TARAS mentioned the recent vandalism at the school. In reference to the vandalism, TARAS asked the coach "why we don't just say 'Fuck it' and leave the gates unlocked." TARAS claimed that he was on a night walk and pointed in the direction of his car. As TARAS walked toward the exit, he made comments about how poorly designed the school was. TARAS then began pointing at different rooftops with a finger gun gesture. While doing this, TARAS called each rooftop he pointed to a "sniper point." As he pointed at the rooftops, TARAS moved his thumb in a downward motion, as if he was firing the finger gun. Then, TARAS told the basketball coach that he could "take the whole school out in 30 seconds." The basketball coach told TARAS that he (the basketball coach) would make TARAS leave if TARAS continued to refuse. As TARAS walked towards the south gate, TARAS told the basketball coach that he (TARAS) was ex-military.

11. Another Folsom High School employee responded to the incident, and this employee provided the following description of their observations to police:

    a) The basketball coach called the FHS employee and provided a description of TARAS. The employee drove to the school responding to the report, and while

4

driving into the staff parking lot off Iron Point Road, the employee saw a man who matched the description provided by the basketball coach. The employee saw TARAS picking up rocks, and when TARAS saw the employee, TARAS walked away quickly. When the employee parked their car and got out, the employee saw TARAS hide behind a palm tree. Then, the employee saw TARAS walking towards the yoga studio, and the employee followed TARAS. The employee then saw TARAS go into the garbage can area of the yoga studio as police arrived.

12. During a registration check, officers identified a vehicle registered to TARAS as a 2023 blue Tesla Model Y (CA license plate #9FNL201). Officers found TARAS' blue Tesla in the parking lot of the yoga studio. I note that this parking lot is accessible to the public and offers parking to the general public for people frequenting the businesses in the shopping center; additionally, the parking lot has no locking gates surrounding it. Officers noted that the FHS property line was less than 500 feet from the area where TARAS' Tesla was parked.

13. Officers also learned that TARAS has 11 firearms registered in his name, and officers also found a gun violence restraining order in place. Officers arrested TARAS, read him his *Miranda* rights, and TARAS agreed to answer questions. TARAS provided officers with the following statement:

> I'm seriously worried for my son's safety. He goes to Folsom High School, and I want him to be more careful. If there's a risk at school, I want to make sure he knows how to get away, and get home.
>
> I walked in the rain today (to Folsom High School) just to look around. I'm an engineer, and have designed schools and prisons. I'm quite shocked that the layout of Folsom High School is like that of the Santa Barbara Prison. The fences and gates are the same as the prison grounds. I think a better design, according to Homeland Security, should not block the exits I've seen at Folsom High School.
>
> I was trying to assess the school for risks, and I found many vulnerable positions for students there. And I think better than locking those gates, that they should leave them open. That's my suggestion. I believe the fire marshal should reassess the exit plan at this school. Not just for the building, but campus wide.

> I was sitting at the studio with my tea, and the beautiful clouds led me to that direction (to Folsom High School). And it just shows how easy it is to walk that campus.
>
> When I was at the high school, I either talked to the basketball coach or the wrestling coach. One of the coaches looked at me like I didn't belong there, and came up to me. I asked him where the exit was, and he pointed to an exit. I then questioned him about an exit on the other side of the building, towards the corner pointing towards the Safeway. The coach told me that they can't exit through there, and would have to turn around "that way" and go through the exit he had initially told me about. Basically, if any of the students needed to exit, they could only go one direction. They're blocked, going the other direction. So, if there's someone at the front of the school causing a ruckus, the students can't exit through the back. They're stuck. So I told the coach that maybe they should leave those gates unlocked for the time being.

14. Officers obtained a search warrant for TARAS' vehicles and house. Officers searched the blue Tesla (CA license plate# 9FNL201) which was left parked in the yoga studio parking lot adjacent to the school. Inside the blue Tesla, officers found a loaded Springfield Hellcat 9mm semi-automatic pistol (serial number BF109633) with a 15 round high-capacity magazine inserted in the glovebox. Officers found the pistol in a holster inside a zipper pouch along with another fully loaded high-capacity 15 round magazine. Officers also found $1200 in cash in the center console of the Tesla. Officers noted that the firearm had a 9mm round loaded in the chamber of the pistol. I know from my training and experience that Springfield does not manufacture firearms in the State of California, and therefore, this firearm has traveled in interstate commerce. Officers noted that this firearm is one of the eleven firearms registered to TARAS.

### IV.     AUTHORIZATION REQUEST

15. Based upon the foregoing, on October 15, 2025, I arrested TARAS based upon probable cause to believe that he had possessed a firearm in a school zone in violation of 18 U.S.C. § 922(q)(2)(A). Pursuant to Rule 5 of the Federal Rules of Criminal Procedure, I am now presenting this affidavit in support of a complaint charging TARAS with violating 18 U.S.C. § 922(q)(2)(A) on September 24, 2025.

16. I further request that the Court order that all papers in support of this application, including the affidavit and this complaint, be sealed until further order of the Court. These documents discuss a criminal investigation involving court orders and intimate partners reporting violations of no-contact orders. These matters are not public, and should remain under seal to protect reporting victims. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation or reveal the identities of reporting victims.

Respectfully submitted,

/s/ Kyle Roberts
Kyle Roberts
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on: October 16, 2025

Hon. Sean C. Riordan
U.S. MAGISTRATE JUDGE

/s/Robert Abendroth
Approved as to form by AUSA Robert Abendroth