UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CURT MICHAEL TARAS,<br>Defendant. | No. 2:25-cr-00262-DAD<br><br>ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS<br><br>(Doc. Nos. 47, 48, 51) |

This matter is before the court on defendant Curt Michael Taras's motions to dismiss various counts of the superseding indictment in this case. (Doc. Nos. 47, 48, 51.) This matter came before the court on March 23, 2026 for hearing. (Doc. No. 57.) Assistant U.S. Attorneys Robert Abendroth and Brad Ng appeared at the hearing on behalf of the government and attorney Matthew Taylor appeared on behalf of defendant Taras, who was present. (*Id.*) Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will deny defendant's motions to dismiss (Doc. Nos. 47, 48, 51).

**BACKGROUND**

Defendant is charged by way of the April 16, 2026 Superseding Indictment in five counts. (Doc. No. 60.) Defendant filed his motions to dismiss on February 16, 2026 (Doc. Nos. 47, 48) and his amended motion to dismiss on March 6, 2026 (Doc. No. 51), before the return of the superseding indictment. The original indictment, which was the operative indictment at the time

that defendant filed his motions, was returned on November 13, 2025. (Doc. No. 16.) The superseding indictment includes an additional charge of stalking in violation of 18 U.S.C. § 2261A(2) (count one) but does not otherwise differ from the original indictment as to the other counts alleged. (Doc. Nos. 16; 60 at 1–2.)

The superseding indictment charges defendant with: (1) stalking in violation of 18 U.S.C. § 2261A(2); (2) being a prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(8); (3) possession of a firearm within a school zone in violation of 18 U.S.C. § 922(q)(2)(A); (4) being a prohibited person in possession of ammunition in violation of 18 U.S.C. § 922(g)(8); and (5) being a prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(8). (Doc. No. 60 at 1–4.)

As relevant to defendant's motions to dismiss, the superseding indictment charges the following facts.

On or about September 18, 2025, defendant became subject to a Sacramento County Superior Court order issued after a hearing "of which he received actual notice, and at which he had an opportunity to participate, that restrained him from harassing, stalking, and threatening an intimate partner of his . . . and that explicitly prohibited the use, attempted use, and threatened use of physical force against such intimate partner that would reasonably be expected to cause bodily injury." (Doc. No. 60 at 2–4.)

On or about September 24, 2025, defendant knowingly possessed a firearm and ammunition, specifically a "Springfield Armory 9mm Hellcat Pistol and rounds of 9mm caliber" in and affecting commerce in a vehicle located in the "parking lot of a business in Folsom, California[.]" (Doc. No. 60 at 2.)

Additionally, on or about September 24, 2025, defendant knowingly possessed a firearm, specifically a Springfield Armory 9mm Hellcat Pistol, "that had moved in interstate commerce, within a distance of 1,000 feet of the grounds of Folsom High School, a place that the defendant knew and had reasonable cause to believe was a school zone[.]" (Doc. Nos. 16 at 2; 60 at 2.)

Further, on or about September 24, 2025, defendant knowingly possessed ammunition, specifically, "various rounds of 40 caliber, 9mm caliber, and .38 Special ammunition" inside his

residence in Folsom, California. (Doc. No. 60 at 3.)

Finally, on or about September 26, 2025, defendant knowingly possessed firearms and ammunition, specifically "a Smith and Wesson .38 caliber pistol, a Springfield Armory 9mm pistol, a Savage Arms Corp 6.5 caliber Creedmoor rifle, a Mossberg 12 gauge shotgun, a Smith and Wesson .357 caliber pistol, and various rounds of 12 gauge, .38 special, 9mm caliber, 5.56 caliber, .223 caliber, and .357 caliber ammunition" in and affecting commerce, in El Dorado County, California. (Doc. Nos. 60 at 3–4.)

**APPLICABLE LEGAL STANDARD**

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "A motion to dismiss is generally 'capable of determination' before trial 'if it involves questions of law rather than fact.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quoting *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)). "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not 'invade the province of the ultimate finder of fact.'" *Id.*

A defendant must move to dismiss an indictment prior to trial "for failure to state an offense" when the basis of the motion is reasonably available and the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "[T]he court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id.*

"[A]n indictment sought under a statute that is unconstitutional on its face or as applied will . . . be dismissed." *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007). A facial challenge to a statute "requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "A statute is unconstitutional 'as applied,'

when 'by its own terms, [it] infringe[s] constitutional freedoms in the circumstances of the particular case.'" *United States v. Martinez*, 169 F.4th 1147, 1157 (9th Cir. 2026).

**DISCUSSION**

**A. Mootness**

The court will first *sua sponte* consider whether the return of the superseding indictment moots defendant's previously filed motions to dismiss directed at the original indictment. *See United States v. Scott*, 884 F.2d 1163, 1164 (9th Cir. 1989) (*sua sponte* considering the question of mootness regarding a motion to dismiss an indictment where a subsequent information was later filed). As discussed above, defendant filed his motions seeking to dismiss the original indictment returned in this case. (*See* Doc. Nos. 47, 48, 51.) However, the only substantive difference between the two indictments is the addition of the stalking charge as count one of the superseding indictment. (Doc. Nos. 16, 60.)

A motion to dismiss an indictment generally becomes moot upon the return of a superseding indictment because "the validity of the indictment no longer poses 'a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" *Scott*, 884 F.2d at 1164 (quoting *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir. 1986)). However, when the court's decision affects the resolution of the government's case against the defendant under the superseding indictment, the motion to dismiss the original indictment is not moot. *Id.* at 1165 (determining the defendant's appeal of the denial of his motion to dismiss was not moot by the filing of a subsequent information); *see also United States v. Mendez*, 28 F.4th 1320, 1323 n.2 (9th Cir. 2022) (determining that the return of a third superseding indictment ("TSI") while the defendant's appeal relating to the second superseding indictment ("SSI") was pending did not moot the appeal because "'deciding the appeal from the [SSI] . . . [could] affect the resolution of the government's case against the defendant under the [TSI][]'") (quoting *Scott*, 884 F.2d at 1165).

Here, the language of the original indictment charging counts one, two, three, and four is identical to the language in the superseding indictment charging counts two, three, four, and five. Accordingly, the court's resolution of defendant's pending motions will affect the resolution of

the government's case against him because the legal questions presented are the same as to both the original and the superseding indictment. Therefore, defendant's motions to dismiss have not been rendered moot.

**B. Motion to Dismiss Count Three**[1]

Defendant moves to dismiss count three of the superseding indictment (Doc. No. 60), arguing that the conduct alleged does not constitute a violation of 18 U.S.C. § 922(q)(2)(A), and that the statue, as applied here, violates defendant's rights under the Second Amendment.[2] (Doc. No. 47 at 1.) Specifically, defendant argues that, as charged, the statute impermissibly criminalizes firearm possession on private commercial property located within a 1,000-foot radius of "school grounds." (*Id.* at 5.) The government argues that § 922(q)(2)(A) is constitutional, both facially and as applied to defendant, because defendant "entered a school zone traveling on a public road" with a firearm and ammunition in his car, and because he parked his car in "a parking area of a shopping center near the school" and left his firearm in the car which was located within a school zone. (Doc. No. 50 at 15.) In reply, defendant argues that the government's opposition is based on allegations that do not appear in the indictment and are not properly considered by the court in considering defendant's motion to dismiss the superseding indictment. (Doc. No. 54 at 7.) Defendant further argues that the historical analogues relied on by the government in arguing that § 922(q)(2)(A) passes constitutional muster do not support a restriction on firearm possession in a school zone while "in transit" to private property located adjacent to a sensitive place such as a school. (Doc. No. 54 at 15.)

/////

/////

[1] While defendant's motion references count two of the indictment, the court refers to the counts in this order as numbered in the operative superseding indictment.

[2] Defendant first states that his motion to dismiss is brought pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A) for failure to state an offense. (Doc. No. 47 at 1.) However, Rule 12(b)(3)(A) permits a motion to dismiss challenging a purported defect in the instituting of the prosecution. In his reply, defendant relies upon Rule 12(b)(3)(B)(v) (Doc. No. 54 at 7), which is the rule pursuant to which a motion to dismiss for failure to state an offense is to be brought.

Section 922(q)(2)(A) prohibits the knowing possession of a firearm "at a place the individual knows or, has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A).

> Section 921(a)(26), in turn, defines a "school zone" as any place "in, or on the grounds of, a public, parochial or private school" or any location "within a distance of 1,000 feet from the grounds of a public, parochial or private school." And § 921(a)(27) defines a "school" as "a school which provides elementary or secondary education, as determined under State law."

*United States v. Metcalf*, 156 F.4th 871, 877 n.1 (9th Cir. 2025). This prohibition does not apply to the possession of a firearm "on private property not part of school grounds[.]" 18 U.S.C. § 922(q)(2)(B)(i). The prohibition also does not apply if the firearm is unloaded, and "in a locked container, or a locked firearms rack that is on a motor vehicle." 18 U.S.C. § 922(q)(2)(B)(iii)(I) and (II).

Here, the superseding indictment charges that defendant knowingly possessed a Springfield Armory 9mm Hellcat Pistol within 1,000 feet of Folsom High School, "a place that defendant knew or had reasonable cause to believe was a school zone." (Doc. No. 60 at 2.) The government has proffered two theories of prosecution as to this charge, arguing both that defendant violated § 922(q)(2)(A) when he possessed the firearm on a public road while travelling to the parking area of the shopping center, and also that he violated the statute when he possessed the firearm while parked at the shopping center located adjacent to the school. (Doc. No. 50 at 15.) While the government conceded at the hearing on the pending motions that the parking lot where defendant's car was located is private property, it continued to contend that defendant's possession of the firearm on a public road within the school zone was in violation of the statute.

To the extent that the government argues that defendant's possession of the firearm on private property located within the school zone violates § 922(q)(2)(A), the court agrees with defendant that such conduct would not constitute a violation of § 922(q)(2)(A). *See United States v. Metcalf*, No. 23-cr-00103-BLG-SPW, 2024 WL 358154, at *2 n.5 (D. Mont. Jan. 31, 2024) ("Because 18 U.S.C. § 922(q)(2)(B)(i) exempts firearms on private property not part of school

grounds, Metcalf was not in violation of 18 U.S.C. § 922(q)(2)(A) until he stepped onto the public sidewalk."), *rev'd and remanded on other grounds,* 156 F.4th 871 (9th Cir. 2025).

However, the government's argument that defendant violated the statute by possessing the firearm while driving through the school zone on a public road is not as clear cut. Defendant argues that the government's interpretation of § 922(q)(2) in this regard would violate the Second Amendment because there is "no historical tradition of disarming citizens while traveling on public roads." (Doc. No. 47 at 6.) The government argues that historical examples of "buffer zone" regulations support the constitutionality of the school zone restriction embodied in § 922(q)(2)(A). (Doc. No. 50 at 9.) The government further contends that defendant's possession of the firearm on a public road in transit to private property within the school zone is a violation of the statute and that such application of the statute is constitutional. (*Id.* at 13–15.) Defendant reiterates in his reply that the government's theory of possession of a firearm in a school zone while in transit to private property is unconstitutional and renders the private property exception under the statute a nullity.[3] (Doc. No. 54 at 2, 8–9.)

The Second Amendment "confer[s] an individual right to keep and bear arms[.]" *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). As the Ninth Circuit has recently observed:

> *Bruen* established a two-step historical framework to determine whether a firearm regulation violates the Second Amendment. At step one, we must determine whether "the Second Amendment's plain text covers an individual's conduct." If it does, then the amendment "presumptively protects that conduct." The government can overcome the presumption at step two by demonstrating that the regulation is consistent with "the Nation's historical tradition of firearm regulation."

*Martinez*, 169 F.4th at 1153 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17, 24 (2022)). When considering the Nation's history and tradition of firearm regulation, "a historical analogue suffices; a 'historical twin' is not required." *United States v. VanDyke*, 157

[3] As noted above, there is an exception in the statute allowing firearm possession in a school zone if the firearm is unloaded, and "in a locked container, or a locked firearms rack that is on a motor vehicle." 18 U.S.C. § 922(q)(2)(B)(iii)(I) and (II). In other words, possession of a firearm while in transit to private property through a school zone would not appear to violate the statute so long as the firearm is unloaded and in a locked container or locked to a firearms rack. (*Id.*) To that extent, the court finds defendant's argument in this regard to be unpersuasive.

F.4th 1082, 1083 (9th Cir. 2025) (quoting *Rahimi*, 602 U.S. at 692). In determining whether a statute passes constitutional muster, "central" considerations are "*why* a regulation burdens Second Amendment rights and *how* it does so[.]" *VanDyke*, 157 F.4th at 1084 (emphasis in original). The "why" and "how" must have "a well-established and representative historical analogue." *Id.* (quoting *Bruen*, 597 U.S. at 30).

With regard to step one of the *Bruen* framework, defendant does not specifically argue that his conduct is covered by the plain text of the Second Amendment. Nonetheless, the government concedes that the statute at issue prohibits conduct covered by the Second Amendment. (Doc. No. 50 at 8.) The court agrees that defendant's alleged conduct, possessing a firearm in his car, is covered by the Second Amendment. *See United States v. Allam*, 140 F.4th 289, 296 (5th Cir. 2025) (finding defendant's conduct, "keeping a rifle in his car ostensibly for self-defense," was covered by the Second Amendment). The government must therefore demonstrate at step two of the *Bruen* framework that the challenged statute is consistent with "the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

The government argues that there are laws similar to the Gun Free School Zones Act ("GFZA") throughout history, which "include King Henry VIII's version of The Statute of Northampton, 19th Century regulations in school settings, and similar 'buffer-zones' around polling places during voting." (Doc. No. 50 at 9.) Defendant counters that these historical examples are distinguishable because each of the historical regulations restricted possession in the "designated sensitive place" and not in the surrounding area. (Doc. No. 54 at 14.) In this regard, defendant challenges the 1,000-foot "buffer zone" in which, subject to certain statutory exceptions, firearm possession is prohibited by § 922(q)(2)(A).

There is a longstanding tradition of laws prohibiting the carrying of firearms in sensitive places, such as schools. *See Wolford v. Lopez*, __U.S.__,146 S. Ct. 2032, 2042 (2026) ("*Heller* warned that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings.'") (quoting *Heller*, 554 U.S. at 626); *Wolford v. Lopez*, 116 F.4th 959, 979 (9th Cir. 2024) (noting that in *Bruen* the

Supreme Court concluded that "legislative assemblies, polling places, courthouses, and schools were 'sensitive places' where firearms could be banned") (citing *Bruen*, 597 U.S. at 30), *rev'd on other grounds,* 146 S. Ct. 2032 (2026).

Instructive in this regard, the Fifth Circuit recently considered an as-applied constitutional challenge to the 1,000-foot buffer zone under § 922(q)(2)(A) and held that the section "is 'relevantly similar' to the Statute of Northampton and going-armed laws and the (limited) historical examples of firearm restrictions in educational settings and buffer zones around polling places. . . " *Allam*, 140 F.4th at 297. The Fifth Circuit further explained as follows:

> Taken together, and discounting for *Bruen*'s caveats about over-weighing scattered or postenactment regulations (here, both limitations apply), these historical firearm restrictions in educational settings perhaps hint at "a tradition of public-carry regulation." *Bruen*, 597 U.S. at 46, 142 S. Ct. 2111. They at least buttress our conclusion that § 922(q)(2)(A) hurdles *Bruen*'s test as applied here, i.e., that carrying firearms in a manner that poses a "clear threat of physical violence to another," *Rahimi*, 602 U.S. at 698, 144 S. Ct. 1889, specifically to school children, could constitutionally be restricted around schools.

*Id.* at 298. Still, the Fifth Circuit in *Allam* declined to "fix how far a buffer zone may stretch before it runs afoul of the Second Amendment" because in the case before it the defendant was "camped out only 40 feet from school grounds." *Id.* at 299.

Moreover, courts across the country have found that there is a history and tradition of placing restrictions on firearm possession in the area surrounding schools and other sensitive places. *See, e.g., United States v. Williams*, No. 25-cr-00015-H-BMM, 2025 WL 3610039, at *6 (D. Mont. Dec. 12, 2025) (concluding that § 922(q)(2)(A) is constitutional in light of historical restrictions on weapon possession in and around schools), *appeal filed*; *United States v. Walter*, No. 3:20-cr-00039, 2023 WL 3020321 (D.V.I. Apr. 20, 2023) (finding that "the area within 1,000 feet of the school grounds is within the scope of 'sensitive places' as contemplated by *Heller*" and that § 922(q)(2)(A) is "constitutionally sound"); *see also Schoenthal v. Raoul*, 150 F.4th 889, 922 n.30 (7th Cir. 2025) (upholding a state statute which prohibited carrying firearms on public transportation as well as "any building, real property, and parking area under control of a public transportation facility" as "a reasonable buffer zone such that firearms may be prohibited there"),

*cert. denied*, __U.S.__, 146 S. Ct. 2158 (2026); *Wolford*, 116 F.4th at 989–990 (finding that some parking areas, such as a student-only parking area at a school, "likely fall within a reasonable buffer zone such that firearms may be prohibited there" when considering a constitutional challenge to a California law), *rev'd on other grounds,* 146 S. Ct. 2032 (2026) (reversing the judgment of the Ninth Circuit as to one of the Hawaii laws at issue); *Maryland Shall Issue, Inc. v. Montgomery County*, 680 F. Supp. 3d 567, 589 (D. Md. 2023) (finding that there is a historical tradition of a reasonable buffer zone around "sensitive places" where plaintiffs challenged a county code which prohibited "carrying a firearm within 100 yards of a place of public assembly").

Notably, another district court recently considered an as-applied challenge to the 1,000-foot buffer zone, similar to the one mounted here, where the defendant contended that he was "driving and walking on a public road well away from the main building [of] East Helena High School[.]" *Williams*, 2025 WL 3610039, at *7. The court considered historical buffer zone regulations around sensitive places and explained as follows:

> King Henry VIII in 1534 issued a law prohibiting the possession of arms within two miles of a court. 26 Hen. 8, c.6, § 6 (1534). Delaware's constitution prohibited militias from assembling "within one mile of a polling place" during the 24 hours before and after the elections closed. Del. Const. art. 28 (1776). The Louisiana legislature passed a law prohibiting the carrying of firearms on election day and within a half mile of any place of registration or revision of registration in 1870. Act of March 16, 1870, No. 100, § 73, 1870 La. Acts 159-60.
>
> Historically, firearm regulations also concerned the surrounding areas of schools. For example, Missouri, in 1879, prohibited "any person" from discharging "any gun, pistol or firearms of any description, in the immediate vicinity of any courthouse, church or building used for school or college purposes." Act of Apr. 30, 1879, § 1, 1879 Mo. Laws 90. The statute defined "immediate vicinity" to mean "a distance not exceeding two hundred yards." *Id.* § 3, at 91. The "buffer zone" prohibition proves analogous to the treatment of other sensitive areas throughout the nation's history.
>
> The historical firearm prohibitions that include regulating a person's possession of a firearm surrounding "sensitive places" provides the Court useful analogies to the modern firearm prohibition of the Gun-Free School Zones Act. . . . Both the modern and historical firearm regulations on and around sensitive places, particularly schools,

/////

> continue to be implemented for the same why and how: to protect and provide students with a safe educational environment by prohibiting firearms on and near the school.

*Id.* at *6.

As discussed above, in this case the government alleges that defendant violated § 922(q)(2)(A) when he possessed a firearm within 1,000 feet of the grounds of Folsom High School in violation of § 922(q)(2)(A) and 924(a)(4). Defendant argues that the statute as applied to him is unconstitutional because the historical analogues relied on by the government did not criminalize firearm possession in transit by the sensitive place and through the surrounding area. (Doc. No. 54 at 15.) In light of the historical analogues discussed by courts to have recently addressed this issue and the statutory exceptions to the buffer zone restriction which allow firearm possession on private property under § 922(q)(2)(B)(i) or possession of an unloaded firearm in a locked container in a vehicle within a school zone under § 922(q)(2)(B)(iii)(I) and (II), this court concludes that § 922(q)(2) is not unconstitutional as applied to defendant under the circumstances alleged in the superseding indictment.[4] *See Williams*, 2025 WL 3610039, at *8

---

[4] The court acknowledges that the factual circumstances in this case, to the extent alleged in the superseding indictment, are distinguishable to some degree from those presented in *Williams*, where the defendant approached a student within the buffer zone while allegedly brandishing and threatening the student with a firearm. 2025 WL 3610039, at *7. Here, it appears undisputed that a firearm was located inside the glove compartment of defendant's locked car, which was parked on private property located adjacent to Folsom High School. (Doc. Nos. 50 at 7; 54 at 5.) Further, defendant does not appear to dispute that to enter the private property where he parked, he had to drive within 1,000 feet of Folsom High School. (Doc. No. 54 at 4.) Defendant does dispute the government's allegations that, when being escorted off school grounds by a high school coach, defendant pointed out "sniper points" and told the coach "he could 'take the whole school out in 30 seconds.'" (Doc. Nos. 50 at 5; 54 at 10.) It is unclear whether defendant also disputes that the firearm located in his car was loaded, as is asserted by the government. (Doc. No. 50 at 7.) These additional, possibly relevant, facts have not been alleged in the superseding indictment. (*See* Doc. No. 60.) As noted above, "[i]n ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Boren*, 278 F.3d at 914. Thus, the court is limited in its review of defendant's as-applied challenge to the superseding indictment pursuant to Rule 12(b)(3). Of course, a motion pursuant to Federal Rule of Criminal Procedure 29 remains available to defendant at trial. *See United See States v. Bychak*, No. 18-cr-04683-GPC, 2021 WL 734371, at *11, 14 (S.D. Cal. Feb. 25, 2021) (denying the defendants' motion to dismiss without prejudice in part because it required the court to decide an issue involving an element of the charged offense, but recognizing the defendant's ability to challenge the sufficiency of the evidence as to an element of the charged offense by way of a motion for judgment of acquittal under Rule 29).

("The undisputed facts establish that Williams was not just innocently traveling to and from his home with a firearm. Williams's conduct supports the 'constitutionality of disarming threatening individuals as near the school as [Williams] was.'") (quoting *Allam*, 140 F. 4th at 299).

Based on the foregoing, the court finds that, as applied to defendant, § 922(q)(2)(A) is constitutional based on the facts alleged in the superseding indictment.[5]

**C. Motion to Dismiss Counts Two, Four, and Five**

Defendant also moves to dismiss counts two, four, and five of the superseding indictment (Doc. No. 60), arguing that § 922(g)(8)(A)'s hearing requirement was not satisfied at the time of his alleged firearm possession. (Doc. No. 51 at 3.) Defendant further argues that § 922(g)(8) is unconstitutional as applied to him because the constitutionality of that statute relies on the procedural safeguards of an "adversarial process and judicial findings of dangerousness before disarmament." (*Id.* at 7.) The government argues that the hearing which took place on September 18, 2025 in the Sacramento County Superior Court satisfies § 922(g)(8)'s hearing requirement because defendant had notice of the hearing and an opportunity to participate in it. (Doc. No. 49 at 7.) Defendant contends in his reply that the state court restraining order was issued prior to the September 18, 2025 hearing being held, which is inconsistent with the requirements of § 922(g)(8). (Doc. No. 53 at 7.)

Section 922(g)(8) makes it unlawful for a person to possess a firearm if they are the subject of a court order as to which the following three criteria are present:

---

[5] Defendant also argues that the government's interpretation of § 922(q)(2)(A) removes the knowledge requirement from that section because the government has not provided proof of defendant's actual knowledge of the school zone's boundaries. (Doc. No. 47 at 7.) Section 922(q)(2)(A) states that "[i]t shall be unlawful for any individual knowingly to possess a firearm . . . at a place that the individual knows, or has reasonable cause to believe, is a school zone." The superseding indictment alleges that defendant possessed a firearm at "a place that the defendant knew and had reasonable cause to believe was a school zone[.]" (Doc. Nos. 16 at 2; 60 at 2.) However, defendant does not challenge the charging language of the superseding indictment, but rather the evidence which the government has proffered to establish his knowledge. (*See* Doc. Nos. 47 7–8; 54 at 12–13.) A challenge to the sufficiency of the evidence is not properly before the court under a Rule 12(b) motion. *See United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993) (holding that "the district court exceeded its authority under Rule 12(b) when it considered Nukida's challenge to the sufficiency of the government's evidence concerning the contaminated solutions' relationship to interstate commerce").

> First, the defendant must have received actual notice and an opportunity to be heard before the order was entered. § 922(g)(8)(A). Second, the order must prohibit the defendant from either "harassing, stalking, or threatening" his "intimate partner" or his or his partner's child, or "engaging in other conduct that would place [the] partner in reasonable fear of bodily injury" to the partner or child. § 922(g)(8)(B). . . . Third, under Section 922(g)(8)(C), the order must either contain a finding that the defendant "represents a credible threat to the physical safety" of his intimate partner or his or his partner's child, § 922(g)(8)(C)(i), or "by its terms explicitly prohibit[ ] the use," attempted use, or threatened use of "physical force" against those individuals, § 922(g)(8)(C)(ii).

*Rahimi*, 602 U.S. at 688. For purposes of § 922(g)(8)(A), "a hearing simply is a proceeding of which the defendant has 'actual notice' and an 'opportunity to participate.'" *United States v. Young*, 458 F.3d 998, 1005–06 (9th Cir. 2006). With regard to the notice requirement, "[t]he statute does not require notice of the fact that a restraining order would issue, nor does it require any other form of 'advance' notice." *Id.* at 1006. With regard to the opportunity to participate requirement, "[t]he prosecution must only show an opportunity to participate; that is, a proceeding during which the defendant *could* have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order." *Id.* at 1009 (emphasis in original).

With respect to each of the challenged counts, the government has alleged that the relevant restraining order to which defendant was subject was issued "after a hearing of which he received actual notice, and at which he had an opportunity to participate[.]" (Doc. Nos. 16 at 1–3; 60 at 2–3.) The court concludes that this charging language is sufficient to state an offense pursuant to § 922(g)(8). *See United States v. Young*, No. 05-cr-02007-FVS, 2005 WL 8158593, at *1 (E.D. Wash. May 2, 2005) (noting the indictment "clearly" stated an offense where it alleged, among other things, that the relevant order "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate"). Defendant's arguments regarding the sufficiency of the hearing and whether he had an opportunity to participate are questions of fact not subject to attack by way of a pretrial motion to dismiss brought pursuant to Rule 12(b)(3) because they would require the court to decide whether the evidence supported an element of the charged offense. *See United States v. Wipf*, No. 24-cr-

00104-BLG-SPW, 2025 WL 1737831, at *2 (D. Mont. June 17, 2025) ("Whether [the defendant] was afforded an 'opportunity to participate' at his appearance is an element the Government must prove beyond a reasonable doubt at trial."); *United States v. Meech*, 487 F. Supp. 3d 946, 952 n.1 (D. Mont. 2020) ("But if at trial the government fails to prove that the operative order qualifies as a 'Restraining Order' . . . [the defendant] remains free to move for a Rule 29 judgment of acquittal[.]"), *aff'd,* No. 21-30025, 2022 WL 136823 (9th Cir. Jan. 14, 2022).[6]

The court next considers defendant's argument that the Second Amendment requires that the court order in question stem from an adversarial hearing for § 922(g)(8) to be constitutional as applied to him in this case. In opposition, the government argues that defendant had the opportunity to participate and did so in the state court hearing, and that § 922(g)(8) does not require an adversarial hearing of the type defendant contends is required. (Doc. No. 49 at 7, 11.) Defendant's reply at times conflates his statutory and constitutional arguments, but he continues to argue that, absent an adversarial hearing and judicial determination that he presented a threat to an intimate partner or the child of an intimate partner, he cannot be prosecuted for violating § 922(g)(8). (Doc. No. 53 at 2, 16–17.)

The Supreme Court in *Rahimi* recently considered the constitutionality of § 922(g)(8)(c)(i), which requires a finding that the court order include a finding that the restrained person poses "a credible threat to the physical safety" of the protected person. 602 U.S. at 693 ("Our analysis starts and stops with Section 922(g)(8)(C)(i)[.]"). *Rahimi* did not hold, as suggested by defendant, that the constitutionality of § 922(g)(8) rests on the provision of an

[6] For the first time in his reply, defendant argues that he did not have notice that the restraining order issued on September 18, 2025 would subject him to federal law prohibiting possession of firearms. (Doc. No. 53 at 15.) The court need not consider arguments raised for the first time in a reply brief. *See United States v. Biden*, 728 F. Supp. 3d 1054, 1111 n.59 (C.D. Cal. 2024) ("Defendant raised these two issues in his reply. While a 'district court need not consider arguments raised for the first time in a reply brief,' the Court addresses them in the interest of judicial economy.") (quoting *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)), *appeal dismissed,* No. 24-2333, 2024 WL 2745125 (9th Cir. May 14, 2024). Even if the court were to consider defendant's belated argument based on the purported lack of notice, the argument would require the court to determine the sufficiency of the hearing provided to defendant, which is an element of the offense under § 922(g)(8), and not appropriate for determination in ruling upon a pretrial motion to dismiss brought pursuant to Rule 12(b)(3).

adversarial hearing. Rather, in *Rahimi* the Supreme Court observed that § 922(g)(8)(C)(i)'s requirement of a judicial finding "matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.* at 698–99. The Supreme Court held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 602 U.S. at 702. In this regard, *Rahimi* does not support defendant's contention that § 922(g)(8) is unconstitutional as applied to him absent the conducting of an adversarial hearing in connection with the state court order.

Following *Rahimi*, the Ninth Circuit considered the constitutionality of § 922(g)(8)(C)(ii), which requires that a restraining order, by its terms, explicitly prohibit the use, attempted use, or threatened use of physical force against the protected party. *See VanDyke*, 157 F.4th at 1083. In *VanDyke*, the defendant was the subject of a restraining order which included the requisite terms under § 922(g)(8)(C)(ii), and the Ninth Circuit determined that the justification for the restraining order was "the state court's implicit determination that he posed a threat to the physical safety of his victim and other protected persons." *Id.* at 1087. The Ninth Circuit concluded: "This is not just analogous, but virtually identical, to the justification that the Court upheld in *Rahimi*" *id.*, and held that § 922(g)(8)(C)(ii) was constitutional as applied to the defendant. *Id.* at 1089.

Neither *Rahimi* nor *VanDyke* compel a finding that § 922(g)(8) is unconstitutional as applied absent an adversarial hearing held in connection with the restraining order. Were this court to require the type of adversarial hearing that defendant suggests is necessary,[7] such a requirement would be in direct conflict with the Ninth Circuit's holding in *Young*, where the court merely required "a proceeding during which the defendant *could* have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order." 458 F.3d at 1009 (emphasis in original). To the extent that defendant argues that the Second Amendment

[7] Defendant at times argues that he was entitled to an adversarial hearing and at other times argues he was entitled to a merits hearing. (Doc. Nos. 48 at 3, 5–7; 51 at 3–7.) Defendant does not define these terms but appears to suggest that he was entitled to a hearing at which testimony was taken, evidence was received, and findings were expressly made. (Doc. Nos. 48 at 3; 51 at 3.)

requires a judicial dangerousness determination prior to the issuance of a restraining order, Ninth Circuit precedent "permits reliance on the terms of an order satisfying [§ 922(g)(8)(C)(ii)] to infer a threat determination." *VanDyke*, 157 F.4th at 1087 n.2.

## CONCLUSION

For the reasons explained above, defendant's motions to dismiss (Doc. Nos. 47, 48, 51) are DENIED.

IT IS SO ORDERED.

Dated: **August 14, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE